UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TRENTON SILDACK,

          Plaintiff,                  No. 11-12939

v.                                District Judge Denise Page Hood
                                Magistrate Judge R. Steven Whalen

CORIZON HEALTH, INC., ET AL.,

          Defendants.

_____ /

## REPORT AND RECOMMENDATION

Currently before the Court is *Motion for Leave to File a Second Motion for Summary Judgment* [Docket. #170] and *Renewed Motion for Summary Judgment* [Docket. #173] by Defendant Dr. Adam Edelman, M.D. ("Dr. Edelman") and Dr. Sylvia McQueen, M.D. ("Dr. McQueen"), filed on December 11, 2013 and January 14, 2014 respectively.

Also before the Court is *Motion to Dismiss and for Summary Judgment* [Docket #174] by Defendant Dr. Jeffrey Stieve, M.D. ("Dr. Stieve"), filed January 15, 2014.   These motions have been referred for Reports and Recommendations ("R&Rs") pursuant to 28 U.S.C. § 636(b)(1)(B). For the reasons set forth below, I recommend the following:

(1).  That Drs. Edelman and McQueen's *Motion for Leave to File a Second Motion for Summary Judgment* [Docket. #170] be DENIED.

(2).  That same Defendants' *Renewed Motion for Summary Judgment* [Docket.

-1-

#173] be STRICKEN.[1]

(3). That Dr. Stieve's Motion to Dismiss and for Summary Judgment [Docket. #174] be GRANTED as to the official capacity claims but DENIED as to the Motion to Dismiss for improper venue and individual capacity claims.

## I. FACTUAL AND PROCEDURAL BACKGROUND

The factual background set forth in my previous Report and Recommendation, adopted on September 30, 2013, is restated in pertinent part. *Report and Recommendation, Docket. #157, 166.*

On July 7, 2011, Plaintiff Trenton Sildack filed a civil rights complaint under 42 U.S.C. § 1983, based on events that occurred when he was a prison inmate in the custody of the Michigan Department of Corrections ("MDOC").

The complaint alleges that while Plaintiff was a prison inmate in the MDOC's custody, Defendants, who were charged with his medical care, were deliberately indifferent to his serious medical needs, in violation of the Eighth and Fourteenth Amendments. The amended complaint, filed September 13, 2011, contains the following allegations. *Docket #37.*

On July 7, 2008, while incarcerated at the Lakeland Correctional Facility ("LCF"), Plaintiff injured his back when, as part of his work detail, he was lifting and moving cement

---

[1]However, Dr. Stieve relies on Drs. Edelman and McQueen's motion for summary judgment in his own motion for dismissal and summary judgment. *Docket #174.* In considering Dr. Stieve's motion, the Court has considered the arguments made by Drs. Edelman and McQueen. *Docket. #173.*

platforms weighing 300 to 400 pounds. *First Amended Complaint*, ¶¶ 48-50. From July 7, 2008 through December 25, 2008, his condition worsened, and he repeatedly requested medical treatment. *Id.* at ¶¶ 53-54.

On December 25, 2008, Plaintiff was transferred to the Cooper Street Correctional Facility, where he remained until January 21, 2009. During that period, he experienced increasingly worsened back conditions, including severe lower back pain, pain radiating to his legs, back spasms, and numbness and tingling in his legs. He repeatedly requested medical treatment and was seen by a number of now-dismissed health care providers. *Id.* at ¶¶ 57-60.

In January, 2009, Plaintiff was transferred to the G. Robert Cotton Correctional Facility ("JCF"), where his symptoms, including severe lower back pain, pain radiating to his legs, spasms, numbness and lower extremity pain, continued to worsen. *Id.* at ¶¶62. During this period, he repeatedly requested appropriate treatment. *Id.* at ¶64. In March, 2009, he was transferred to the Newberry Correctional Facility ("NCF"), where he remained until December 15, 2009, during which time he experienced the above-described symptoms as well as urinary pain and incontinence. *Id.* at ¶¶ 67-70. During this time, he was seen by health care providers, Larry J. Sell, M.D., Rebekah M. Haggard, M.D., and Joseph R. Burtch, M.D.[2] *Id.* at ¶70. After being transferred to Ojibway Correctional Facility ("OCF") on December 15, 2009, he continued to request medical care for his worsening condition. *Id.*

---

[2]These Defendants were dismissed on September 30, 2013. *Docket. #166.*

¶ ¶ 72-75.  He was also seen by now-dismissed Defendants Lizabeth Ralles, M.D., Kim Mahler, D.O., and James Rocco, M.D.[3]  *Id*.  ¶75.

Plaintiff alleges that Dr. Stieve, as Chief Medical Officer for the MDOC, established policy, approved practices, and oversaw "the medical care and treatment" of MDOC inmates. *Id.* at ¶79. Plaintiff alleges further that Dr. Stieve "was directly involved in and responsible for establishing policy and practices, overseeing, and decision-making" involved in his "medical care and treatment."  *Id.* at ¶80.  Plaintiff alleges likewise that during his incarceration at NCF and OCF, Defendants Adam Edelman, M.D., Sylvia McQueen, M.D., Carl J. Keldie, M.D., and Richard Miles, M.D.,[4] all non-treating physicians employed by Prison Health Services, Inc. ("PHS") or Corizon Health, Inc. ("Corizon") were "directly involved" in his failure to receive adequate medical care while incarcerated at these facilities. *Id.* at ¶¶77-78.

Plaintiff alleges that now-dismissed Defendants Drs. Sell, Haggard, Burtch, Ralles, Mahler, Rocco, and Miles, either treating or consultative physicians employed by either PHS or Corizon, violated his rights by failing to provide him with timely and appropriate medical care.  *Id.* at ¶ 90.

Plaintiff alleges that Dr. Stieve and Defendants Drs. Edelman, McQueen, and Keldie, non-examining supervising staff employed by PHS or Corizon, violated his rights by the

---

[3] Also dismissed on September 30, 2013.  *Docket. #166.*

[4]Drs. Keldie and Miles were dismissed on September 30, 2013.  *Docket. #166.*

-4-

following acts or omissions:

a. Failing to approve and order timely and appropriate examinations and/or evaluations;

b. Failing to approve, order, and provide timely and appropriate appointments and referrals for appropriate medical testing, including but not limited to MRI testing;

c. Failing to timely and properly analyze and interpret the results for examinations and testing;

d. Failing to approve, order, and provide timely and appropriate appointments and/or referrals to consulting doctors and specialists, including but not limited to a neurologist and/or neurosurgeon;

e. Otherwise failing to approve, order, and provide timely and appropriate medical care and treatment, including but not limited providing medical care and treatment as ordered by consulting doctors and specialists; and

f. Failing to develop, implement, and enforce appropriate policies and practices for treatment of patients . . . with low back injuries. *Id.* at ¶91.

Plaintiff underwent back surgery shortly after his release from prison. *Id.* at ¶92. He alleges permanent injuries, pain, and episodic loss of lower extremity and sexual function due to Defendants' failure to provide him with adequate treatment. He seeks monetary damages.

On September 30, 2013, the Honorable Denise Page Hood granted summary judgment to Prison Health Services, Inc., Corizon Health, Inc. and Drs. Sell, Burtch, Haggard, Ralles, Mahler, Miles, Rocco, and Keldie, dismissing these Defendants with prejudice. *Docket. #166.* She denied summary judgment to Defendants Drs. Edelman and McQueen. *Id.* The only remaining Defendants are Drs. Edelman, McQueen, and Stieve.

## II.   STANDARD OF REVIEW

Fed.R.Civ.P. 12(b)(6) provides for dismissal of a complaint "for failure of the pleading to state a claim upon which relief can be granted."   In assessing a Rule 12(b)(6) motion, the court accepts the plaintiff's factual allegations as true, and asks whether, as a matter of law, the plaintiff is entitled to legal relief.  *Rippy v. Hattaway,* 270 F.3d 416, 419 (6th Cir. 2001).

In evaluating the sufficiency of a complaint, the court must first determine whether it contains factual allegations, as opposed to legal conclusions.  *Ashcroft v. Iqbal*, 556 U.S. 662 (2009).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Id.*, at 678 (citing  *Bell Atlantic Corp. v. Twombley*, 550 U.S 544, 555 (2007)).  Second, the facts that are pled must show a "plausible" claim for relief. *Iqbal*, at 678-679.

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R.Civ.P. 56(c).  To prevail on a motion for summary judgment, the non-moving party must show sufficient evidence to create a genuine issue of material fact.  *Klepper v. First American Bank*, 916 F.2d 337, 341-42 (6th Cir. 1990).   Drawing all reasonable inferences in favor of the non-moving party, the Court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it

is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).  Entry of summary judgment is appropriate "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celetox Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).  When the "record taken as a whole could not lead a rational trier of fact to find for the nonmoving party," there is no genuine issue of material fact, and summary judgment is appropriate.  *Simmons-Harris v. Zelman*, 234 F.3d 945, 951 (6th Cir. 2000).

Once the moving party in a summary judgment motion identifies portions of the record which demonstrate the absence of a genuine dispute over material facts, the opposing party may not then "rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact," but must make an affirmative evidentiary showing to defeat the motion. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989).  The non-moving party must identify specific facts in affidavits, depositions or other factual material showing "evidence on which the jury could *reasonably* find for the plaintiff." *Anderson*, 477 U.S. at 252 (emphasis added).  If, after sufficient opportunity for discovery, the non-moving party cannot meet that burden, summary judgment is clearly proper.  *Celotex Corp.*, 477 U.S. at 322-23.

### III.   DISCUSSION

**A.  Official Capacity Claims**

Dr. Stieve argues first that he is immune from suit to the extent that the claims can be construed to state a claim against him in his official capacity.  *Defendant's Brief, 2-5.*

Defendant is correct that under the Eleventh Amendment, a State or an agency of a State is protected from a suit in federal court for monetary damages by sovereign immunity. *Alden v. Maine*, 527 U.S. 706, 713, 119 S.Ct. 2240, 144 L.Ed.2d 636 (1999).  Eleventh Amendment immunity extends to state officials or employees sued in their official capacities. *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 71, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989); *Ernst v. Rising*, 427 F.3d 351, 358 (6th Cir.2005).   While "immunity does not apply if the lawsuit is filed against a state official for purely injunctive relief enjoining the official from violating federal law," Plaintiff has not requested injunctive relief.  *Ernst,* 427 F.3d at 358–359.  As such, present Defendants are immune from suit as to the official capacity claims.

**B.  Individual Capacity Claims Against Dr. Stieve**

Dr. Stieve, Chief Medical Officer for the MDOC, also argues that claims against him in his individual capacity should be dismissed.  *Defendant's Brief* at 12-17.  Adopting the arguments made by Defendants Drs. Edelman and McQueen in their renewed motion for summary judgment, *Docket. #173, see below,* he contends that his involvement in the case was limited to an August 14, 2009 meeting with Defendant Dr. Edelman (Director of

Utilization Management for PHS) and Dr. McQueen (Medical Director of PHS) in which he recommended "continued conservative treatment . . . and a great deal of follow-up by Plaintiff's treaters." *Id.* at 13.

Prisoners have a constitutional right to medical care under the Eighth Amendment,. *Estelle v. Gamble,* 429 U.S. 97, 103; 97 S.Ct. 285, 50 L.Ed.2d 251 (1976). Prison officials may not act with deliberate indifference to the medical needs of their prisoners. *Id.* at 104. An Eighth Amendment claim has two components, one objective and the other subjective. *Farmer v. Brennan,* 511 U.S. 825, 834, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994); *Comstock v. McCrary,* 273 F.3d 693, 702 (6th Cir. 2001). Under the objective component, "the plaintiff must allege that the medical need at issue is 'sufficiently serious.'" *Id.* Under the subjective component, "the plaintiff must allege facts which, if true, would show that the official being sued subjectively perceived facts from which to infer substantial risk to the prisoner, that he did in fact draw the inference, and that he then disregarded that risk." *Id.*

Medical malpractice does not rise to the level of an Eighth Amendment violation. *See Estelle v. Gamble, supra*, 429 U.S. at 105-106 ("a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner"). The Sixth Circuit has also observed that "[w]here a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are *generally* reluctant to second guess medical

judgments and to constitutionalize claims which sound in state tort law." *Westlake v. Lucas,* 537 F.2d 857, 860 at n. 5 (6th Cir.1976)(emphasis added). However, the fact that an inmate receives *some* level of medical attention does not necessarily preclude constitutional scrutiny of the quality of that care. *See Terrance v. Northville Regional Psychiatric Hosp.,* 286 F.3d 834, 844 (6th Cir. 2002)(*citing Waldrop v. Evans,* 871 F.2d 1030, 1035 (11th Cir. 1989))("the relevant inquiry as to whether the defendants provided grossly inadequate care" may require "a particularized, fact-specific inquiry").

Claims against Dr. Stieve are based in part on his notes memorializing an August 14, 2009 meeting between himself, Dr. Edelman, and Dr. McQueen, apparently scheduled to address bothersome complaints by Plaintiff's fiancé to PHS upper management regarding Plaintiff's care. *Plaintiff's Response, Exhibit* 24, Docket. #179-5. The notes state that while the meeting participants were aware of a recent MRI showing nerve root impingement, they declined a recommendation by Plaintiff's treating physician for more aggressive treatment. *Id.* The notes state that the meeting participants would review the results of further testing. *Id.* Three weeks following the meeting, Dr. LaHaye, a consultative neurologist, opined that Plaintiff required immediate steroid injections. Further, he found that if the steroid injections failed, surgery would be indicated. Nonetheless, Dr. LaHaye's recommendation for steroid injections was rejected in favor of conservative treatment, including yoga exercises. *Plaintiff's Exhibits 27, 29, Docket. #179-6.*

Dr. Stieve makes a number of contentions in support of summary judgment. He

contends that none of the medical experts "have said that [he] did anything wrong in this case." *Defendant's Brief* at 12. However, as held by the District Judge in her September 30, 2013 denial of summary judgment to Drs. Edelman and McQueen, a question fact exists as to whether the deliberate *withholding* of adequate care after being advised of Plaintiff's condition constituted an Eighth Amendment violation. *Docket. 166.* The issue before the Court is the extent of Dr. Stieve's involvement in the decision to withhold appropriate care. For the same reason, Dr. Stieve's argument that he should be granted summary judgment because he never personally treated or examined Plaintiff fails. As found by the undersigned, Plaintiff's treating sources made repeated recommendations for more aggressive treatment which were denied by non-examining Defendant supervisors who were nonetheless, monitoring Plaintiff's condition and treatment. *Docket. #157* at 8-14.

Further, Dr. Stieve's notes from an August 14, 2009 meeting between himself and Drs. Edelman and McQueen indicate that he played an active role in determining the course of Plaintiff's treatment. *Plaintiff's Exhibit* 24, Docket. #179-5. The notes state that as of that date, Dr. Stieve was aware of an MRI of the lumbar spine order by a treating source which showed disc herniations with nerve root impingement at L4-5 and L5-S1. *Exhibit 24, Docket. #179-5, Exhibit 24, #179-4, Docket. #158,* 9-10. Dr. Stieve remarked that Plaintiff's fianceé had given the MRI to an outside consultant who had already recommended surgery. *Exhibit 24.* Nonetheless, as a result of the meeting, Dr. Stieve determined that an "alternative treatment plan" would be implemented consisting of an "independant (sic) repeat physical

-11-

exam including assessment for foot drop. . ." *Id.*  Dr. Stieve stated that he "and either Dr. Edelman or McQueen should review the independent PE."  *Id.*  He stated further that "[s]hould [Plaintiff's] condition worsen, change significantly, or the review of the private consultant offer additional information, this decision may certainly be reviewed." *Id*.

In conformity with the August 14, 2009 decision to obtain more evidence, neurosurgeon Dr. LaHaye made three recommendations on September 9, 2009 after examining Plaintiff and reviewing the MRI of the lumbar spine: (1) epidural steroid injections should be administered immediately (2) an MRI of the cervical spine should be ordered in response to Plaintiff's reports of upper extremity pain, and (3) if the steroid injections failed to produce good results, surgery was warranted. *Plaintiff's Exhibit 27, Docket. #179-6.*  His findings are consistent with conclusions of an earlier treating physician (Dr. Sell) who endorsed the need for surgery after viewing the MRI, *Exhibit 26, Docket. #179-6,* and another treating source's (Dr. Burtch's) September 15, 2009 opinion that Plaintiff required steroid injections. *Exhibit 28, Docket. #179-6*.

 Dr. Stieve argues that at the time he made the August 14, 2009 notes, Dr. LaHaye "had not yet made his September 9, 2009 recommendation that a trial of epidural steroid injections might help Plaintiff." *Defendant's Brief* at 13.  He argues that he "had no involvement in the decision not to proceed with epidural steroid injections. *Defendant's Brief* at 13.  He relies on the affidavit of non-Defendant Harriet Squier, M.D., a physician in employed as the "Utilization Management Outpatient Medical Director" of Prison Health

Services, Inc./Corizon Health, Inc. who states that she was "the sole person who made the decision not to approve the request [made by treating source Dr. Burtch in response to Dr. LaHaye's findings and recommendation] and instead issue an alternate treatment plan." *Docket #172-1, ¶5.*

Dr. Squier's affidavit, purportedly taking all responsibility for the decision to withhold appropriate treatment, does not settle the question of whether Dr. Stieve's role in determining Plaintiff's treatment amounted to a constitutional violation. First, Dr. LaHaye's finding that more aggressive treatment should be administered immediately was made only three weeks after Dr. Stieve resolved to review an independent physical examination to determine the course of future treatment. *Plaintiff's Exhibit 24, Docket. #179-5.* His alleged failure to review Dr. LaHaye's opinion stands at odds with his earlier August 14, 2009 resolution to procure all evidence relative to Plaintiff's back condition and to review the future findings. More critically, a question remains as to whether Dr. Stieve was actually unaware of Dr. LaHaye's recommendation. Notably, while Dr. Squier states that she was the solely responsible for denying the treating recommendation for steroid injections, she does *not* state that Drs. Edelman, McQueen, or Stieve were unaware of Dr. LaHaye's recommendation. Notably, Dr. Stieve has not provided an affidavit or any other evidence showing that he was unaware of the contents of Dr. LaHaye's September 9, 2009 report.

Moreover, as noted in my previous recommendation, Dr. Stieve's recommendation for "alternative treatment" was unsupported by the opinion of any treating or consultative

-13-

source.  The fact that Dr. Stieve approved *some* treatment does not resolve the question of whether the care administered at his direction was "grossly inadequate" to the extent necessary to establish an Eighth Amendment violation.  *Terrance, supra,*  286 F.3d at 844; *Strayhorn v. Caruso*, 2013 WL 1189842,  *1-4 (E.D. Mich February 15, 2013)(medical staff advising heart attack victim to breath into a paper bag not entitled to summary judgment on Eighth Amendment claims).

Dr. Stieve, relying on the analysis found in Drs Edelman and McQueen's renewed motion for judgment*,* argues that the Court should follow the Sixth Circuit's reasoning in *Shofner v. Comacho,*  2000 WL 1359633, *2 (6th Cir., September 14, 2000).  In *Shofner,* the Court upheld the dismissal of the Eighth Amendment claim, noting that although the defendants refrained from following the advice of a treating source recommending back surgery, the medical sources provided examined him regularly and prescribed medication. "[A] difference of opinion regarding medical treatment or Shofner's need for back surgery is insufficient to state a claim under the Eighth Amendment."

In contrast here, the finding that more aggressive treatment was appropriate was made by multiple treating sources, including Drs. Sell, Burtch, and Mahler.  *See Docket #157* at 10-12.  Further, *none* of the treating sources opined that Plaintiff's back condition could be adequately treated on a long-term basis with medication and stretching.  The decision by non-treating, non-examining supervisors Drs. Edelman, McQueen, and Stieve to implement an "alternative" plan of treatment runs completely contrary to the treating recommendations that

-14-

Plaintiff required more aggressive care.  *Id.*   Moreover, only three weeks after the August 14, 2009 meeting at which Dr. Stieve resolved to monitor Plaintiff's future care, a neurosurgeon's recommendation for immediate steroid injections was also rejected. Considered these facts, as we must, in the light most favorabe to Plaintiff, Dr. Stieve's decision to withhold more aggressive care did not amount to a reasoned "dispute . . . over the adequacy of the treatment" as contemplated by *Westlake, supra.*   Rather, a dispute of fact exists as to whether in denying the care recommended by the treating sources, Dr. Stieve perceived, then fecklessly disregarded the substantial risk to Plaintiff.[5]  *Comstock, supra.*

## C. Venue

Dr. Stieve also argues that the case should be dismissed or transferred for improper venue pursuant to 28 U.S.C. §§ 1391(b), 1406(a) or, in the alternative, that the court exercise its discretion and transfer the case under 28 U.S.C. § 1404.   *Defendant's Brief* at 6-12, *Docket #174.*  He notes that remaining Defendants, himself, Dr. Edelman, and Dr. McQueen,

---

[5]

Dr. Stieve (relying on another case cited by Drs. Edelman  and McQueen in their renewed motion for summary judgment) cites *Arflack v. County of Henderson, Kentucky*, 412 Fed.Appx. 829, 2011 WL 652748 (6th Cir. February 24, 2011) in support of his argument that his actions did not rise to the level of a constitutional violation.  In *Arflack,* the Court found that Plaintiff's unilateral belief that his orbital bone fractures were not adequately repaired after he sustained injuries in an assault did not establish an Eighth Amendment claim.  The Court noted that Plaintiff's contention stood at odds with extensive surgical records showing that he had undergone surgery to repair the fractures.  *Id.* at *2-3.  In contrast here, Plaintiff was denied surgery and even the less aggressive treatment of steroid injections by non-treating decision-makers that had been recommended by both treating and consultative sources.

-15-

worked in the Western District of Michigan at the time of events in question and currently "work and reside" in the Western District. *Id.* at 11-12. He points out that although Plaintiff was incarcerated at JCF between January 22, 2009 to March 23, 2009, he was otherwise housed at facilities within in the Western District during the events in question. *Id.* at 6-11.

28 U.S.C. §1391(b) provides that:

A civil action may be commenced in

(1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located;

(2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or

(3) a judicial district in which any defendant may be found, if there is no district in which the action may otherwise be brought.

Venue is assessed at the commencement of an action, and complaints about improper venue must be raised promptly. *Sullivan v. Tribley,* 602 F.Supp.2d 795, 799 (E.D.Mich. 2009)(citing § 1406(a))("movant must raise a 'timely and sufficient objection' to improper venue"). Dr. Stieve does not dispute that at the time the Complaint was filed, some of the now-dismissed Defendants resided in the Eastern District of Michigan or that a portion of the events in question occurred in same. Accordingly, dismissal or transfer for improper venue is not required.

Alternatively, Dr. Stieve requests a change of venue to the Western District of Michigan under § 1404 "which permits the Court to transfer venue to another district where

-16-

it might have been brought if it is necessary for the convenience of the parties and witnesses or the interests of justice." *Sullivan,* 602 Fed. Supp. 2d at 799. Under § 1404, the factors that guide a district court's discretion in deciding whether to transfer a case include: (1) the convenience of the witnesses; (2) the location of relevant documents and the relative ease of access to sources of proof; (3) the convenience of the parties; (4) the locus of the operative facts; (5) the availability of process to compel the attendance of unwilling witnesses; (6) the relative means of the parties; (7) the forum's familiarity with governing law; (8) the weight accorded the plaintiff's choice of forum; and (9) trial efficiency and interests of justice, based upon the totality of the circumstances. *Overland, Inc. v. Taylor*, 79 F.Supp.2d 809, 811 (E.D.Mich.2000).

Defendant Stieve argues that many factors support the transfer of the case to the Western District. He states that "[a]ll of the witnesses and records keepers from the MDOC facilities that will be called at trial all work and reside" in the Western District. *Defendant's Brief* at 12. He notes that the remaining Defendants "work and reside in the Western District." *Id.* He points out that Plaintiff's counsel works in the Western District. *Id.*

The Court should nonetheless decline to exercise its jurisdiction under § 1404(b). First, the Complaint was filed over three years ago and discovery is now completed. The undersigned wrote a comprehensive Report and Recommendation throughly analyzing the arguments and evidence offered by parties, followed by the District Court's careful review of same. The majority of Defendant treating physicians were dismissed and only three

-17-

remain.  If the District Court accepts the Report and Recommendation filed today, the case will be ready for trial.

A number of the factors to be considered in deciding whether to transfer the case are inapplicable here.  Because discovery is completed, the "location of relevant documents" does not weigh in favor of transfer.   None of the parties have alleged that the Court would be required to compel unwilling witnesses or that the parties or witnesses lack the means to travel to this Court.   The considerations of "trial efficiency" and    "totality of the circumstances" weigh heavily against transfer.  At this juncture, it is not in the interest of judicial economy to transfer this case to a court that is completely unfamiliar with its facts, issues, and history.  Accordingly, this court should decline Dr. Stieve's invitation to transfer venue.

Accordingly, Defendant Steive's motion for summary judgment or to dismiss for lack of  venue should be denied.

**D.  Drs. Edelman and McQueen's Motion for Leave to File a Renewed Summary Judgment Motion.**

Dr. Edelman, Medical Director of "Utilization Management" for Corizon and PHS, and Dr. McQueen, Medical Director of PHS, request leave to file a renewed motion for summary judgment.  *Motion for Leave, Docket. #170.*  They contend that their original motion for summary judgment, denied on September 30, 2013, was made without benefit of

-18-

the October 28 and November 18, 2013 deposition testimony of Plaintiff's witnesses. *Id.* at 3. They argue that the neurosurgeon who performed the surgery shortly after Plaintiff's release from prison, Jeffrey Kachmann, M.D. ("Dr. Kachmann") acknowledged that "conservative treatment was appropriate." *Id.* at 4. They contend further that Plaintiff's expert, Charles Kershner, M.D ("Dr. Kershner") "testified that the only person who he thought was deliberately indifferent was the person who refused Plaintiff the epidural steroid injections" recommended in September, 2009 by Dr. LaHaye. *Id.* In their reply brief, Defendants' have included Dr. Squier's affidavit stating that she was solely responsible for the denial of the recommended steroid injections. *Docket #172*-1.

These arguments and exhibits do not provide a basis to revisit the September 30, 2013 denial of summary judgment. As to the desirability of conservative treatment, Dr. Kachmann actually stated that conservative treatment was "usually," not always advisable. *Docket #170-2*, pg. 18. He went on to state: "But it's situational. If someone presents with a partial or complete foot drop, then the earlier the surgery, the better." *Id.* While Dr. Kachmann stated that initially, conservative treatment was generally warranted to allow "swelling to go down," none of the testimony cited by Defendants indicates that Dr. Kachmann believed that medication and yoga were adequate long-term treatment modalities for an individual with ongoing pain and neurological symptoms. *Id.* at 19-20. Further, he appears to have endorsed the recommendations for steroid injections made by Dr. LaHaye. *Id.* at 26.

While Defendants claim that Dr. Kershner opined that the individual denying steroid

-19-

injections to Plaintiff in September, 2009 was the only "deliberately indifferent" source, *Docket #170-3* at pg. 98,  a question remains as to whether Defendants were aware of Dr. LaHaye's recommendation, as well as the extent of  their own involvement in nixing that recommendation. The deposition testimony of these witnesses does resolve the question of whether he present Defendants were deliberately indifferent to Plaintiff's condition.

Defendants' reliance on non-Defendant Dr. Squier's claim that she bore sole responsibility for the September, 2009 denial of the steroid injections does not provide a basis for a grant of summary judgment.  As noted above,  Dr. LaHaye's recommendation for immediate, aggressive treatment  was made only three weeks after Drs. Stieve, Edelman, and McQueen resolved to schedule an independent physical examination to determine the course of future treatment.  *Plaintiff's Exhibit 24, Docket. #179-5.*  Notably, Dr. Stieve's notes from August 14, 2009 state that all evidence relative to Plaintiff's back condition and the future findings would be reviewed by either Dr. Edelman or Dr. McQueen.  *See* **III, B**, above.  At a minimum, the August 14, 2009 meeting notes suggest that Defendants were in fact aware of the contents of the neurosurgeon's examination and recommendation, yet disregarded its import before delegating "decision-making" responsibility to a subordinate physician.

While Dr. Squier now conveniently states that she was solely responsible for denying the *treating recommendation* for steroid injections made by Dr. Burtch on September 14, 2009, there is a question of fact as to what weight the recommendations or assessments of Drs. Edelman, McQueen, and Steive played.  Moreover, Dr. Squier does *not* state that Drs.

Edelman or McQueen were unaware of Dr. LaHaye's underlying recommendation that formed the basis of the treating request.    Likewise, neither the original nor renewed affidavits submitted by Drs. Edelman and McQueen state that they were unaware of the Dr. LaHaye's September, 2009 findings.  *Docket #104-10-11, Docket #172-2-3.*   Notably, the reference to Dr. LaHaye's September, 2009 findings (and the mis-characterization of those findings) found in Dr. McQueen's original affidavit suggests that she was indeed aware that immediate steroid injections, possibly followed by surgery, had been recommended by Dr. LaHaye.  *Docket #104-11,* ¶8.  Both of the newer affidavits contain the narrow statement that neither was "the person" who denied the treating physician's request for steroid injections. *Docket #172-2, ¶2, #173, ¶2.*  However, none of the affidavits  resolves the question of the role Drs. Edelman and McQueen had in making the underlying decision to reject Dr. LaHaye's findings.[6]   Dr. Squier's contention that she bore the administrative responsibility for denying requests for additional  treatment made by treating sources at the clinical level does not establish that Drs. Edelman and McQueen were unaware of Dr. LaHayes findings or did not play a role in the initial rejection of the recommendations.

---

[6]      An exhibit attached to Plaintiff's response to the original motion for summary judgment states that Dr. Squier held the position of Associate Medical Director for Utilization Management while working for CMS.  *Exhibit 21, Docket #120-6,* pg. 15.  She stated further that Dr. McQueen conducted the employment interview for her later position at PHS.  *Id.* at pg. 54.  While it is unclear whether she reported directly to Dr. Edelman, Medical Director for Utilization Management or Dr. McQueen, Medical Director of PHS, her job as Associate Medical Director for Utilization was subordinate to either Defendant's position.

Defendants Edelman and McQueen have not shown any basis to revisit the previous denial of summary judgment. Therefore, their motion for leave to file a second summary judgment motion should be denied, and their second summary judgment motion [Docket #173] should be stricken.[7]

### IV.   CONCLUSION

For these reasons, I recommend the following:

(1).  Drs. Edelman and McQueen's *Motion for Leave to File a Second Motion for Summary Judgment* [Docket. #170] should be DENIED.

(2).  Same Defendants' *Renewed Motion for Summary Judgment* [Docket. #173] should be STRICKEN.

(3).  Dr. Stieve's Motion to Dismiss and for Summary Judgment [Docket. #174] should be DENIED.

Any objections to this  Report and Recommendation must be filed  within 14 days of service of a copy hereof as provided for in  28 U.S.C. §636(b)(1) and E.D. Mich. LR 72.1(d)(2).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Howard v.*

---

[7] In reviewing the motion for leave to file a renewed motion for summary judgment, I have also reviewed the arguments and cases offered by Defendants in the proposed summary judgment motion.  *Docket #173.*  As discussed in Dr. Stieve's motion for summary judgment, these arguments do not provide a basis for dismissal. Accordingly, I could recommend alternatively that the motion for leave to file a renewed summary judgment be granted, but that the renewed motion for summary judgment be denied. Same thing, really.

-22-

*Secretary of HHS,* 932 F.2d 505 (6th Cir. 1991); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Secretary of HHS,* 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231,* 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within 14 days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than 20 pages in length unless by motion and order such page limit is extended by the court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

> s/R. Steven Whalen
> R. STEVEN WHALEN
> UNITED STATES MAGISTRATE JUDGE

Dated: September 2, 2014

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing document was sent to parties of record on September 2, 2014, electronically and/or by U.S. mail.

> s/Carolyn M. Ciesla
> Case Manager to the
> Honorable R. Steven Whalen